UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

MALLORY R.[1],                          )
                                        )
            Plaintiff,                  )
                                        )
      v.                                )        CIVIL NO. 4:22cv1
                                        )
KILOLO  KIJAKAZI, Acting                )
Commissioner of Social Security,        )
                                        )
            Defendant.                  )

<u>OPINION AND ORDER</u>

This matter is before the court for judicial review of a final decision of the defendant

Commissioner of Social Security Administration denying Plaintiff's application for Disability

Insurance Benefits under Title II of the Social Security Act and for Supplemental Security

Income under Title XVI of the Act.  Section 405(g) of the Act provides, inter alia, "[a]s part of

his answer, the [Commissioner] shall file a certified copy of the transcript of the record including

the evidence upon which the findings and decision complained of are based.  The court shall

have the power to enter, upon the pleadings and transcript of the record, a judgment affirming,

modifying, or reversing the decision of the [Commissioner], with or without remanding the case

for a rehearing."  It also provides, "[t]he findings of the [Commissioner] as to any fact, if

supported by substantial evidence, shall be conclusive. . . ."  42 U.S.C. §405(g).

      The law provides that an applicant for disability benefits must establish an "inability to

engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to last for a continuous period of no less than 12

months. . . ."  42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A).  A physical or mental impairment

---

[1] For privacy purposes, Plaintiff's full name will not be used in this Order.

is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after a hearing, the Administrative Law Judge ("ALJ") made the following findings:

1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2024.

2.      The claimant has not engaged in substantial gainful activity since September 5, 2019, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

3.      The claimant has the following severe impairments: Crohn's disease; epilepsy with headaches; rheumatoid arthritis; major depressive disorder; anxiety disorder; and somatic symptom disorder (20 CFR 404.1520(c) and 416.920(c)).

4.      The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.      After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: lift/carry/push/pull 20 pounds frequently and 10 pounds occasionally, sit/stand/walk 6 hours in an 8-hour workday with normal breaks; no ladders, ropes, or scaffolds, occasional ramps, stairs, balance, stoop, kneel, crouch, and crawl; no exposure to unprotected heights, moving mechanical parts, commercial driving, vibration, open pools of water, or open flames; no work with sharp instruments or tools, such as box cutters or knives; moderate noise environment; can carry out simple tasks with simple work-related decisions and judgments, performing these tasks with adequate pace, persistence and concentration in two hour segments, allowing for normal breaks; low stress work, such as no assembly line and no hourly quotas, but can meet end of day expectation; can tolerate interaction with others; and changes in a routine work setting consistent with simple work.

6.      The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.      The claimant was born on October 21, 1990 and was 28 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.      The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.     Considering the claimant's age, education, work experience, and residual

functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11.    The claimant has not been under a disability, as defined in the Social Security Act, from September 5, 2019, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 109-120).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to benefits, leading to the present appeal.

Plaintiff filed her opening brief on August 16, 2022.  On September 27, 2022 the defendant filed a memorandum in support of the Commissioner's decision, to which Plaintiff replied on December 2, 2022. Upon full review of the record in this cause, this court is of the view that the Commissioner's decision should be affirmed.

A five step test has been established to determine whether a claimant is disabled.  *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987).  The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order:  (1)  Is the claimant presently unemployed?  (2)  Is the claimant's impairment "severe"?  (3)  Does the impairment meet or exceed one of a list of specific impairments?  (4)  Is the claimant unable to perform his or her former occupation?  (5)  Is the claimant unable to perform any other work within the economy?  An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled.  A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162

n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984).   In the present case, Step 5 was the determinative inquiry.

In support of remand, Plaintiff argues that the ALJ's assessment of Plaintiff's RFC was erroneous.  Plaintiff asserts that she has greater mental and physical limitations than were accounted for in the RFC and that she should have a more restrictive RFC. Plaintiff contends that her RFC should include limitations for time off-task and social interaction. Plaintiff asserts that her seizure disorder and migraines require time off-task.

Plaintiff alleged that she experienced both grand mal and petit mal seizures (Tr. 34, 114). She stated that she had petit mal seizures almost daily, and since November 2020, she had two grand mal seizures, with the most recent occurring in the beginning of January 2021 (Tr. 35, 114).

However, the record only documents one hospitalization for a grand mal seizure, and minimal follow-up treatment. In August 2019, Plaintiff had an abnormal EEG documenting possible epilepsy, and she was hospitalized for a grand mal seizure in October 2019 (Tr. 115, 451-52, 587-88, 598). During hospitalization, Plaintiff's provider noted her report that this was her second grand mal seizure in the past two months (Tr. 115, 587-88). On discharge, Plaintiff was told to increase her epilepsy medication (Keppra) and she was given additional medication for migraine and insomnia (Depakote) (Tr. 115, 598).

Plaintiff followed-up with her neurologist, Gary Fox, M.D., in February 2020 (Tr. 115, 462). She reported no major seizures since she was last seen in October 2019, but stated that random petit mal seizures occurred each day (Tr. 462). Her examination was normal, and Dr. Fox continued her on Keppra (Tr. 115, 462-66). Plaintiff did not return for treatment with

5

Dr. Fox until a telephone visit in November 2020, when she again reported no reoccurrence of grand mal seizures, and she asked whether she could return to driving (Tr. 115, 773). Dr. Fox cautioned her not to drive for at least 90 days (Tr. 115, 773). Thereafter, despite Plaintiff's testimony that she went to the emergency room for a grand mal seizure in January 2021, the hospital had no record of treatment during that time (Tr. 37-38, 111, 787)

Based on this treatment record, in April 2020, state agency physician, B. Whitley M.D., opined that Plaintiff was limited to light work, with additional postural limitations based on seizure precautions (Tr. 60, 117). On reconsideration review in June 2020, J.V. Corcoran, M.D., opined that Plaintiff was similarly limited to light work with additional postural and environmental limitations to account for her seizures (Tr. 117, 82-83). The ALJ found those opinions persuasive, and limited Plaintiff to light work, occasional postural activities, and no exposure to unprotected heights, moving mechanical parts, commercial driving, vibration, open pools of water or open flames, no work with sharp instruments or tools, and a moderate noise environment (Tr. 113, 117).

Thus, the record shows that Plaintiff was hospitalized once for a seizure during the relevant time period, but her follow-up treatment was otherwise minimal, to the extent that she requested approval to drive in November 2020 (Tr. 115, 773). The ALJ accounted for Plaintiff's epilepsy by limiting her to simple, low-stress, light work with postural and environmental restrictions, and that residual functional capacity finding is supported by the record outlined above.

Plaintiff has alleged difficulty with memory, following instructions, concentrating, completing tasks, handling stress, and adjusting to changes in routine (Tr. 40-43, 114, 283-90).

6

While the record documented some symptoms of depression, anxiety, and impaired memory, Plaintiff's mental status examinations were generally normal, and she did not exhibit difficulties with interaction.

The record reflects that Plaintiff received treatment for depression and anxiety with difficulty sleeping, memory problems, and social isolation (Tr. 115, 390-94). In September 2019, Clyde Yan, N.P., noted that Plaintiff was anxious and her affect was blunted, but her mental status examination was otherwise normal (Tr. 115). In particular, her immediate, recent and remote memory were normal, and she was attentive and focused (Tr. 115, 392-93). In December 2019, Plaintiff reported improved mood since starting medication; she was less overwhelmed and emotional, but still somewhat irritable and anxious (Tr. 115, 398-401). Mr. Yan again observed that Plaintiff's memory was intact and she was attentive and focused (Tr. 115, 399).

During follow-up treatment in early 2020, Mr. Yan continued to note that Plaintiff was cooperative with normal speech, insight, and judgment, and her memory, attention, and concentration were intact (Tr. 112, 115-16, 413). In April 2020, she attended a neuropsychological assessment with Kelly Earnst, Ph.D., to assess her "current cognitive and emotional status and assist in differential diagnosis and treatment planning" (Tr. 112, 494). She reported concentration and memory difficulties and anxiety, and noted that she was often irritable "but kept those feelings inside" (Tr. 112, 495).

Dr. Earnst observed that Plaintiff was alert during testing, maintained a good level of attention and concentration, and she showed an overall well-organized test-taking strategy (Tr. 112, 116, 495). Test results showed that Plaintiff exhibited average intellectual abilities, impaired

attention and recall, and symptoms of depression, anxiety, conversion of psychological stress into physical symptoms, and discomfort in social situations (Tr. 497-500). Dr. Earnst made several recommendations, including continued medication and counseling for Plaintiff's mood symptoms (Tr. 500). He also recommended that Plaintiff "should try to use various compensatory strategies for her concentration and memory concerns, such as minimizing distractions and taking short breaks when engaged in tasks requiring sustained concentration" (Tr. 500-01).

In June 2020, state agency psychologist, Maura Clark, Ph.D., reviewed Plaintiff's medical records, including Dr. Earnst's evaluation, and opined that Plaintiff had mild limitations in understanding, remembering, or applying information; moderate limitations in interaction with others; moderate limitations in concentration, persistence, or pace; and moderate limitations in adapting or managing herself (Tr. 80, 117). She opined that Plaintiff could understand, remember, and carry out detailed but not complex tasks; relate on a superficial and ongoing basis with co-workers and supervisors; attend to tasks for a sufficient period to complete tasks; and manage stresses involved with detailed work-related tasks (Tr. 85, 117). The ALJ found Dr. Clark's moderate limitations persuasive, with the exception of the moderate limitation on interacting and relating to others, and he found that Plaintiff was limited to performing work involving only simple work-related tasks and low-stress work (Tr. 118).

Plaintiff argues that the ALJ erred when he dismissed the opinion of Dr. Clark, the state-agency psychologist, that Plaintiff had moderate limitations in her ability to "maintain attention and concentration for extended periods"; to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances"; "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a

consistent pace without an unreasonable number and length of rest periods"; to "interact appropriately with the general public"; and to "set realistic goals or make plans independently of others." (Tr. 98-99). Plaintiff asserts that she would be prone, at least some of the time, to interruptions to her workday and workweek from her psychological impairments which might result in her needing additional breaks, working at a slowed pace, interacting with the general public, and having difficulty complying with normal expectations of attendance and punctuality.

The ALJ discussed Dr. Clark's opinion and found that the moderate limitations Dr. Clark assessed were persuasive with the exception of the moderate limitation in interaction, and he found that Plaintiff was limited to performing work involving only simple tasks and low stress work (Tr. 117-18). The ALJ expressly discussed Dr. Clark's narrative opinion, and incorporated much of it into the residual functional capacity finding (Tr. 85, 113, 117). The ALJ found that Plaintiff could perform simple tasks with simple work-related decisions and judgments, with adequate pace, persistence, and concentration in two-hour segments, allowing for normal breaks (Tr. 113). He further found that Plaintiff was limited to low stress work, such as no assembly line and no hourly quotas, and she could tolerate interaction with others and changes in a routine work setting consistent with simple work (Tr. 113).

Plaintiff contends that the ALJ should have included limitations in connection with "additional breaks, diminished work pace, absences, or tardiness" (Pl. Br. 16). However, the Commissioner argues that the ALJ expressly addressed pace limitations in the residual functional capacity finding by limiting Plaintiff to low stress work, such as no assembly line and no hourly quotas (Tr. 113). The ALJ found that Plaintiff could perform those tasks with adequate pace, persistence, and concentration in two hour segments with normal breaks. The Commissioner

notes that Plaintiff has not shown that she was more limited. *See Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013) (claimant bears the burden to demonstrate how his mental impairment affects his ability to work). The record shows that Plaintiff's mental status examinations consistently documented focused attention and concentration (Tr. 392-93, 498-401, 413, 495). Further, the record did not show that Plaintiff's seizures precluded her from performing low stress, simple work with normal breaks (*see* Tr. 30-31, 35 (Plaintiff's testimony that seizures are stress-related)).

Plaintiff argues that the ALJ did not adequately explain why he rejected Dr. Clark's opinion regarding moderate limitations in interacting and relating to others. However, at step three, the ALJ explained why he found that portion of the opinion unpersuasive and instead found that Plaintiff had mild, rather than moderate, limitations in interaction (Tr. 112). The ALJ acknowledged that Plaintiff's mood testing showed concerns of social isolation, suspiciousness, hostility in relationships, discomfort in social situations, and that Plaintiff had isolative tendencies (Tr. 112, 494-501). However, the ALJ also noted that Plaintiff engaged socially with her husband and neighbors, and she played card games on a weekly basis (Tr. 112, 286-87). Further, Plaintiff's mental status examinations showed some problems with mood such as anxiety, but she remained cooperative with providers throughout (Tr. 112, 115-18, 392-93, 398-401, 413).

At the hearing, Plaintiff did not testify to significant issues with interaction, and in her adult function report she stated that she had no problems getting along with family, friends, neighbors, or others, and she got along well with authority figures (Tr. 34-43, 114, 288-89). As the Court can follow the path of the ALJ's reasoning in rejecting the interaction limitations

opined by Dr. Clark, there is no error.[2]

Plaintiff asserts that, had the ALJ adopted Dr. Clark's opinion that she was limited to superficial interaction, there would have been no jobs available that she could perform. However, she concedes that at least one of the jobs identified by the vocational expert did not require significant interaction. In fact, two out of the three jobs – electrical accessories assembler and bagger – are coded as "not significant" for dealing with people (Tr. 119). As a result, even if the superficial interaction limitation were incorporated, approximately 47,300 jobs remained (Tr. 119), and the evidence supports the ALJ's determination that this is a significant number of jobs.

Plaintiff also challenges the ALJ's evaluation of Dr. Earnst's "opinion". Specifically, she argues that the ALJ "failed to even mention the potentially disabling opinion" that Plaintiff "would require 'short breaks when engaged in tasks requiring sustained concentration'" (Pl. Br. 21, Tr. 500). The Commissioner argues that Plaintiff mischaracterizes Dr. Earnst's neuropsychological evaluation report, and the ALJ's discussion of that report (Tr. 112, 116, 119, 494-501).

Plaintiff underwent a neuropsychological evaluation with Dr. Earnst in April 2020 (Tr. 112, 494). Dr. Earnst administered several tests, and assessed Plaintiff as having average intellectual functioning, some impairment in attention and delayed recall, and some symptoms of depression, anxiety, and social isolation (Tr. 500). Based on this testing, Dr. Earnst provided a list of several recommendations, including continued medication treatment, counseling, daily

---

[2] Plaintiff contends that "the checkbox limitations assessed by the reviewing psychologists were most certainly not encapsulated within their narrative opinions" (Reply at 4) and that *Pavlicek v. Saul*, 994 F.3d 777(7th Cir. 2021), requires remand. However, Dr. Clark specifically indicated in her narrative opinions that Plaintiff can attend to tasks for a sufficient period of time to complete the tasks. (Tr. 85, 99).

lifestyle habits to promote good emotional health, and compensatory strategies for concentration and memory concerns (Tr. 500-01). Dr. Earnst's suggested compensatory strategies included "minimizing distractions and taking short breaks when engaged in tasks requiring sustained concentration, [and] keeping a written daily task list and making a concerted effort to finish each task fully before proceeding to a subsequent one" among several other recommendations (Tr. 501).

Plaintiff focuses on Dr. Earnst's suggestion of "taking short breaks" to argue that the ALJ ignored a "potentially disabling opinion" (Pl. Br. 21). However, Plaintiff mischaracterizes the recommendation as a "medical opinion" indicating that Plaintiff would be off-task for more than 10% of the workday. Dr. Earnst did not opine that Plaintiff required short breaks in order to work, nor did he define "short breaks," or suggest that the break time would take Plaintiff off task more than 10 percent of the workday (Tr. 500-01). Dr. Earnst merely suggested taking short breaks as one of seven possible compensatory strategies for Plaintiff's concentration and memory concerns (Tr. 500-01).

The ALJ expressly considered Dr. Earnst's report throughout his decision, and was not required to weigh every single recommendation particularly where Dr. Earnst did not express the recommendations as necessities in order for Plaintiff to work (Tr. 112, 116, 119, 494-501).

Plaintiff also relies on Dr. Earnst's report and her seizures as a basis for arguing that the ALJ should have included an additional limitation for time off-task in the residual functional capacity finding. However, Dr. Earnst did not express an opinion that Plaintiff required off-task time (Tr. 494-501). Further, the treatment record did not demonstrate that Plaintiff suffered ongoing grand mal seizures, or that her petit mal seizures had an ongoing impact on her ability to

stay on-task (Tr. 115, 773). Notably, no physician submitted an opinion stating that Plaintiff's mental or physical impairments necessitated time off-task. Plaintiff felt that despite her seizures, she was capable of driving in November 2020, and Dr. Fox did not prohibit driving, although he cautioned her against driving for 90 days post-visit (Tr. 115, 773). Moreover, Plaintiff testified that her seizures were stress related, and the ALJ specifically limited her to simple, low stress work with normal breaks (*see* Tr. 30-31, 35, 113). Plaintiff has failed to show that additional limitations were supported by the record.

As there is no basis for remand, the decision will be affirmed.

Conclusion

On the basis of the foregoing, the Decision of the Commissioner is hereby AFFIRMED.

Entered: December 19, 2022.

s/ William C.  Lee
William C. Lee, Judge
United States District Court